## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

### Baltimore Division

| | |
|---|---|
| Heaven White, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 1:19-cv-01442-CCB |
| The City of Annapolis by and through the City Council, *et al.*, | |
| Defendants. | |

### CONSENT DECREE

**EXHIBIT A**

**Table of Contents**

I.    BACKGROUND…………………………………………………………….…1

II.   MISSION STATEMENT………………………………………………….……2

III.  JURISDICTION, PURPOSE, AND SCOPE OF ORDER……………………..….3

IV.   DEFINITIONS……………………………………………………………....……4

V.    GENERAL NONDISCRIMINATION PROVISIONS……………….……....…….5

VI.   SPECIFIC PROVISIONS……………………………………………………….6

      Inspections of the HACA Properties…………….…..………………………..6

      Notice of Unlicensed Rental Properties…………………..…………………….6

      Written Policies and Procedures for Inspections of City Rental Properties……....…7

      The City's Work Group Dedicated to the HACA Properties……..………………8

      City Action to Ensure the Viability of HACA and the Security of Affordable
      Housing in the City……………………………………………………………..10

      Modification of City Policies to Facilitate an Expedited Redevelopment of the
      HACA Properties …………………………………………………………………11

      The City Agrees to a Good Faith Review of the Potential for Affordable and
      Workforce Housing Legislation in the City of Annapolis …………………….……..13

      Rental Licensing Training …………………………..…………………………14

      Record-Keeping and Reporting Requirements…………….…………………...14

      Remedies for Non-Compliance …………………..………..……………………15

      Monetary Relief and Attorneys' Fees and Costs…..……………………………16

      Mutual Release and Modification of Decree ……..……………………………16

      Miscellaneous Terms……………………………………………………………17

i

**EXHIBIT A**

## I.    BACKGROUND

The Plaintiffs, past and present residents of public housing, initiated this action on May 16, 2019, to enforce the provisions of the Equal Protection Clause, Fair Housing Act as amended in 1988, 42 U.S.C. § 3601, *et seq.* (the "Act"); Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 1982, 1983, 1985, 1986 and 2000d; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA") as well as state law claims.  The Complaint as amended, alleges policies and practices by the City of Annapolis ("City") and the Housing Authority of the City of Annapolis ("HACA")  relating to the licensing and inspection of rental properties including public housing, all of which is owned and operated by HACA, that had the effect of discriminating against the African American and disabled residents of public housing.  As a result of these actions, the Plaintiffs allege, they have suffered hardships and injury, and they and other residents of HACA will in the future suffer injury without changes to the current practices.

Plaintiffs allege that HACA as it exists today has been severely hampered by prior management missteps and missed opportunities so that its properties are in dire need of renovation and maintenance to ensure the health and safety of its residents going forward.  Plaintiffs further allege that HACA struggles to provide decent, safe and sanitary housing without the financial ability to adequately repair and maintain its properties, and as a result sought to exempt itself from the City's licensing and inspection regime.  The City complied with these efforts to the detriment of HACA's tenants.

On June 10, 2019, the City adopted Resolution R-26-19 to ensure that all tenants in the City will be treated equally and afforded the same protections. City policy now calls for the inspection of all rental properties without exception.   Similarly, newly enacted Maryland legislation, Maryland Code, § 13-112 of the Housing & Community Development Article, to

**EXHIBIT A**

become effective October 1, 2020 also requires the inspection and licensing of HACA properties without exception, but with no defined or established enforcement procedures. *See* 2020 Md. Laws Ch. 241. To avoid further delay or injury to Plaintiffs and other HACA residents similarly impacted, the Plaintiffs and the City seek to resolve these issues in a cooperative manner.

Plaintiffs and the City acknowledge and agree that this Consent Order is the compromise of disputed liability claims, and that the actions taken are not to be construed or used by any party or third party as an admission of liability on the part of the City, which expressly denies any and all liability. The City intends merely to avoid further litigation by entering this Consent Order. In recognition of the mutual benefit to Plaintiffs and the City, and to avoid extensive pre-trial discovery, and costly and protracted litigation, Plaintiffs and the City agree as follows:

## II.   MISSION STATEMENT

**WHEREAS,** the City of Annapolis (the "City") has the authority, under its police powers, to provide for the general welfare of all residents of the City of Annapolis; and

**WHEREAS,** it is the Housing Authority of the City of Annapolis ("HACA") that is authorized by the state and federal government to operate public housing in the City of Annapolis; and

**WHEREAS,** valid concerns have been raised regarding past standards at the HACA properties, and the City agrees that there is room presently for improvement of the City's enforcement of housing standards in the HACA Properties; and

**WHEREAS**, the City desires that improved living standards for residents in the HACA Properties be achieved in a meaningful and sustainable manner.

**NOW THEREFORE**, in the interest of resolving the present litigation, the City hereby restates its commitment to the following:

i.   Creating a strong, sustainable, inclusive community for all;

2

**EXHIBIT A**

ii.    Undertaking all reasonable efforts to strengthen the housing market in the City of Annapolis and housing standards for the City's lowest income residents;

iii.    Identifying methods to satisfy the need for quality affordable rental homes, and to helping residents gain access to those affordable rental homes;

iv.    Supporting the redevelopment of the of the properties of the Housing Authority of the City of Annapolis;

v.    Ensuring that individual renters including those in HACA Properties have access to resources providing assistance for dealing with landlord-tenant disputes; and

vi.    Encouraging inclusive and sustainable communities free from discrimination of any sort within the City of Annapolis.

### III.  JURISDICTION, PURPOSE, AND SCOPE OF ORDER

1.    The purpose of this Consent Decree is to ensure compliance with and redress violations of Equal Protection Clause, Fair Housing Act as amended in 1988, 42 U.S.C. § 3601, *et seq.* (the "Act"); Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 1982, 1983, 1985, 1986 and 2000d; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"). All actions required to be taken herein are intended to be coextensive with the remedial reach of these statutes and regulations.

2.    Plaintiffs and the City stipulate and the Court finds that the Court has personal jurisdiction over the City for purposes of this Civil Action, and subject matter jurisdiction over the claims in this Civil Action pursuant to 28 U.S.C. §§ 1331; 42 U.S.C. § 12133; 28 U.S.C. §§ 2201 and 2202; 42 U.S.C. § 3613; and 28 U.S.C. § 1367.

3.    The provisions of this Consent Decree apply to the City of Annapolis.

3

**EXHIBIT A**

4.   This Consent Decree shall govern the conduct of the parties for a period of no more than ten (10) years with said time period commencing on the Effective Date of the Consent Decree.

## IV.   DEFINITIONS

5.   The following terms when used in this Consent Decree shall have the following meanings:

a.   "City" refers to the City of Annapolis, which according to Article I of its Charter, constitutes a municipal body corporate and politic. "City" also refers to the geopolitical boundaries of the City of Annapolis.

b.   "HACA" or the "Housing Authority" refers to the Housing Authority of the City of Annapolis which is a public body corporate and politic. Maryland Code, § 13-103 of the Housing & Community Development Article.

c.   "Defendants" refers to the City and HACA.

d.   "HACA Properties" refers to the following six (6) existing HACA Properties:

i.   Bloomsbury Square – Rebuilt in 2002, this is HACA's newest property, and is comprised of 51 units;

ii.   Harbour House – Constructed in 1964, is comprised of 273 units;

iii.   Eastport Terrace – Constructed in 1953, is HACA's oldest property and is comprised of 84 units;

iv.   Morris H. Blum Senior Apartments – Constructed in 1976, are HACA's only dedicated units for the elderly and disabled, and

4

**EXHIBIT A**

require tenants be 55 years old (or 50-years-old if disabled) to apply and is comprised of 154 units;

 v. Robinwood – Constructed in 1970 is comprised of 150 units; and

 vi. Newtowne Twenty (or "Newtowne 20") – Constructed in 1971 is comprised of 78 units.

e. "HACA Units" are any one of the 790 units contained within the HACA Properties.[1]

f. "HACA Tenants" are tenants of any of the existing HACA Properties as defined herein.

g. "Effective Date of the Consent Decree" refers to the date the Court gives final approval to and enters this Consent Decree.

h. "Unit" or "rental unit" refers to units within the City that are required pursuant to the Annapolis City Code to be licensed under Chapter 17.44 of the code.

## V. GENERAL NONDISCRIMINATION PROVISIONS

6. Without admitting any past wrongdoing, the City shall comply with the Fair Housing Act, Section 504 of the Rehabilitation Act, Title II of the ADA, their implementing regulations, and state and federal law independent of this Agreement in their programs, activities, and services. Specifically, the City, its officers, employees, agents, and successors shall not:

---

[1] This number reflects the number of HACA units at the time the above-captioned litigation was filed. The parties anticipate that the number of units may fluctuate during the period-of-time covered by the consent decree. Necessarily, this footnote also applies to the number of units identified in the definition of HACA Properties immediately preceding it.

5

**EXHIBIT A**

    a. Fail to inspect or fail to allow for inspection of the HACA Properties, or any other rental properties in the City, by the City's inspectors for the purposes of rental license inspections, to the same degree and with the same level of scrutiny as all other rental properties in the City; and

    b. Adopt, maintain, enforce, or implement any zoning or land use laws, regulations, policies, procedures, or practices that discriminate on the basis of race, color, or disability in violation of the FHA, the ADA, or Section 504.

## VI. SPECIFIC PROVISIONS

### Inspections of the HACA Properties

7. The City acknowledges that inspections of the HACA properties shall be of the same rigor and standards and be completed in the same manner as inspections conducted by the City of all other residential rental properties in the City.

8. The City will resume annual rental inspections at all HACA properties upon expiration of the "City of Annapolis Declaration of State of Emergency" related to the COVID-19 Public Health Emergency. The City has hired an additional inspector which increases its capacity to inspect HACA properties. The City will inspect HACA properties in accordance with State Law and the City Code.

9. The City shall allocate funding of inspectors in a sufficient amount to inspect all City rental properties, including HACA properties, annually.

10. The City shall create an inspection report for HACA properties once the initial round of inspections is complete and provide the same to Plaintiffs' counsel.

### Notice of Unlicensed Rental Properties

6

**EXHIBIT A**

11. Within six (6) months of the end of the City's declared COVID-19 State of Emergency, the City will post all rental properties in the City that are occupied but not licensed at that time.

12. To the extent a rental property cannot be licensed due to a failure of inspection, the City shall allow a maximum of thirty (30) days for the landlord to make repairs such that the property can be licensed, after which time the property will be promptly posted in accordance with the policies and procedures discussed in paragraphs 14–18 *infra*.

13. The City's standard notice will be posted on the door of the individual unit that is unlicensed.

**Written Policies and Procedures for Inspections of City Rental Properties**

14. The City will craft, create, and compile the Rental Licensing Policies and Procedures Manual for conducting rental inspections. The manual will be completed within (60) days of the Effective Date of the Consent Decree.

15. At a minimum, the Rental Licensing Policies and Procedures Manual will:

   a. specifically identify the City's methodology for determining when a landlord in the City must relocate a tenant for required repairs of a tenant's property related to conditions which are hazardous to health and safety;

   b. specifically address landlord responsibilities and actions that must be taken regarding the identification and remediation of mold;

   c. define what conditions within an apartment will amount to "life safety" hazards to the tenant; and

   d. specifically address landlord responsibilities and actions that must be taken when "life safety hazards" are found present in a unit.

7

**EXHIBIT A**

16. Within sixty (60) days of the completion of the manual, the City will train its inspectors on the new protocols found under the Rental Licensing Policies and Procedures Manual, and prepare for inspections when permitted by the City's declared COVID-19 State of Emergency.

17. If a City licensing inspection reveals a violation, the City shall direct HACA to remediate the issue in accordance with the City Code.

18. Within sixty (60) days of the entry of this Consent Decree, the City shall utilize best efforts to improve information sharing with HACA residents about City services, other local government services, and non-profit partner services that may be useful for HACA residents in a variety of different circumstances.

   a. The City will provide the above-referenced services information to a HACA tenant who resides in a property that is subject to condemnation;

   b. In the event that the City condemns a HACA property, the City Inspector will notify the Community Development Division who will provide information to the resident of the condemned property and aid the resident in connecting with any needed services;

   c. The City will include (a) and (b) above in the City policy and procedures to be drafted by Code Compliance; and

   d. The City will make best efforts to improve the visibility of City services on the City's website in search results and will make available paper copies of the relevant City services to HACA residents in a manner that is coordinated through HACA.

**The City's Work Group Dedicated to the HACA Properties**

19. The City agrees that it will establish a Work Group dedicated to reporting on the conditions of the HACA Properties, and that the Work Group will create a

8

**EXHIBIT A**

report on the conditions of public housing in Annapolis. The Work Group will also create short-term and long-term plans for redevelopment of the HACA Properties.

20. At a minimum the City will invite to participate in the Work Group, the following individuals or groups of individuals:

    a. Delegate Shaneka T. Henson,

    b. A resident from each HACA Property (Head of Residents/Tenants Association, if any),

    c. Counsel for Plaintiffs,

    d. City Administration (Director of Planning and Zoning and the Chief of Community Development or their successors),

    e. Legislative Work session (Full City Council and Individual Meetings),

    f. State Representative from Maryland Development Authority,

    g. Two HACA Reps including the Housing Executive Director and Director of Finance, and

    h. Representative from the Housing Commission of Anne Arundel County.

21. The City will complete a study on the HACA Properties which is currently commissioned with the law firm of Motley Waller by December 2020. The City will ensure the study results in a report no later than December 15, 2020, detailing the items identified on pages 6 and 7 of Motley Waller's June 8, 2020, Response to the City's Request for Proposals, and shall also include, but not be limited to the following:

    a. chronically recurring hazardous conditions at HACA Properties;

    b. any dangerous or harmful incidents and trends on HACA Properties;

    c. an existing preservation and upkeep scheme; and

**EXHIBIT A**

        **d.** a redevelopment plan, including potential funding requirements and sources, and a potential schedule.

**City Action to Ensure the Viability of HACA and the Security of Affordable Housing in the City**

22. The City hereby represents that an Affordable Housing Committee is already being established by the City Council to address the issues raised by this litigation. The City will explore combining its Economic Development and Community Development Division into one division, called Community, Housing, and Economic Development. With City Council approval, the City will hire an additional staff member with expertise in low-income housing development.

23. The City will continue to affirmatively pursue existing programs that have substantive effects in the area of affordable housing. To that end, the City has already undertaken or begun to undertake the following:

        a. The City has a Community Development Division that assists HACA in its Redevelopment efforts and assists City residents in finding and retaining affordable housing. In addition to the staff person in charge of the Division, the City provides HUD Community Development Block Grant (CDBG) funds annually to organizations such as the Community Action Agency, the Light House and Blessed in Tech Ministries to assist City residents in finding housing and retaining housing. City staff also coordinates efforts with the Anne Arundel County Department of Social Services Homeless Coordinator and the Anne Arundel County and Annapolis Partnership to End Homelessness members;

**EXHIBIT A**

b.   The Community Development Division provides a Property Rehabilitation Program for homeowners with incomes at or below 60% AMI.   The program is administered by Arundel Community Development Services Inc., which is the County's housing and community development agency.   This program helps specific low-income homeowners retain their affordable housing by helping them keep the property up to code; and

c.   The Community Development Division also partners with nonprofit affordable housing organizations, like Habitat for Humanity, to provide affordable homeownership opportunities, and in at least one such development on Clay St., the City was able to provide settlement expense help to the new homeowners all of whom were former public housing residents.

**Modification of City Policies to Facilitate an Expedited Redevelopment of the HACA Properties**

24. The City agrees to give priority to negotiations with the County and State Legislators for tax credits and grants to ensure the redevelopment of the HACA Properties is viable.

25. The City agrees to report on those efforts to negotiate with the County and State Legislators as part of the annual Consent Decree Compliance Report described in Paragraph 37, herein.

26. Within ninety (90) days of the Effective Date of this Consent Decree, the City will prepare a resolution stating its desire to prioritize all HACA projects.  Upon submission of an application, City staff will hold weekly meetings internally to make sure review of HACA projects is expedited.

**EXHIBIT A**

27. The City will hold quarterly meetings with HACA to discuss the status of HACA redevelopment.

28. The City will designate at least one individual within the City government whose job responsibilities shall include, among other things, facilitation of communications between HACA and the City, and who shall act as an advocate and promoter of the redevelopment of the HACA Properties.

    a. The responsibilities of this individual will also include assisting with identifying and obtaining of financing options and potential developers for public-private development of the HACA properties and acting as a liaison between HACA and the City to facilitate the redevelopment process; and

    b. The name and title of this individual will be identified in the first Consent Decree Report as defined *infra*.

29. The City will consider the use of City land for redevelopment of HACA properties, either by donation or low-cost, long-term land lease arrangement.

30. In order to prioritize HACA development projects and upon notification of a HACA development project, the City agrees:

    a. That it will assign a qualified member of the City staff as a development project liaison. The role of the development project liaison will be to provide guidance regarding the relevant development requirements and associated review processes in order to expedite the same. The City's project liaison will have direct access to the Planning & Zoning Department and City staff leadership for assistance in expediting required steps in the development process;

12

**EXHIBIT A**

      b.  That the City's development project liaison will be available to meet with HACA's development team as necessary but will meet with HACA's development team at least once very thirty (30) days until the City's review process is complete;

      c.  That the development project liaison will meet internally with City staff to facilitate expedited review of HACA's development project; and

      d.  That the development project liaison will keep the records necessary to document the project's activities and progress.

31. Within sixty (60) days of any the Effective Date of this Consent Decree, the City will notify Plaintiffs' Counsel of the name and job title of the City's Development Project Liaison for any existing HACA project, and will notify HACA of the same in writing along with the provisions of this section of the Consent Decree.  Future Development Project Liaisons will be identified to Plaintiffs' Counsel and HACA as projects arise.

**The City Agrees to a Good Faith Review of the Potential for Affordable and Workforce Housing Legislation in the City of Annapolis**

32. Within ninety (90) days of the Effective Date of this Consent Decree, the City agrees to explore the possibility of adopting Affordable and Workforce Housing Legislation.

33. The City agrees that the Housing and Human Welfare Committee will review and consider the Affordable and Workforce Housing Legislation passed by Anne Arundel County, a copy of which is attached hereto and incorporated herein, as Attachment 1 as a starting point for their discussion.

34. The City agrees that the Housing and Human Welfare Committee will report back to the full City Council on their good faith efforts to consider adopting

13

**EXHIBIT A**

legislation that is substantially similar to that found in the County, a recommendation that will include all of the aspects of any similar type of recommendation generally made by a committee which is tasked with exploring potential legislation for the full Council.

**Rental Licensing Training**

35. Within thirty (30) days of the completion of the Rental Licensing Policies and Procedures Manual, the City agrees to provide a copy of the training materials to be used at the sessions described *supra* to counsel for Plaintiffs.

36. Within fifteen (15) days of employment, all new employees of any of the City roles identified in the preceding paragraph will undergo the same training. This requirement may be satisfied by review of the same training materials provided to City employees pursuant to paragraph 35.

**Record-Keeping and Reporting Requirements**

37. The City shall file with the Court, with a copy to Plaintiffs' counsel, a Consent Decree Compliance Report no later than January 31st each year, or the first business day thereafter, for the remainder of this Decree.

38. The City Consent Decree Compliance Reports shall describe all specific actions it has taken to fulfill its obligations under this Decree. After the initial compliance report, all reports shall include information regarding activities that have occurred since the previous report was submitted. The City shall include in the reports the following information:

   a. Report on efforts to negotiate with the County and State Legislators on the status of tax credits and grants to ensure the redevelopment of the HACA Properties;

14

**EXHIBIT A**

   b.  Publicly available information on financing, development approval,
       construction, and anticipated location of HACA's redeveloped
       properties;

   c.  Evidence of training required pursuant to this Decree; and

   d.  A summary of inspection, licensing, and code enforcement actions as
       those might relate to HACA Properties.

39. All required Consent Decree Compliance Reports, certifications and
    documentation of compliance submitted to Plaintiffs' representatives must be
    submitted to:

    P. Joseph Donahue
    18 West Street
    Annapolis, Maryland 21401
    pjd@thedonahuelawfirm.com

40. Throughout the term of this Decree, the City shall retain all records relating to
    implementation of the provisions of this Consent Decree.

**Remedies for Non-Compliance**

41. Plaintiffs may file an enforcement action if they have first provided the City
    with a notice of dispute, which shall trigger an obligation for good faith
    negotiations between the City and Plaintiffs regarding the issue(s) in dispute.
    The period for informal negotiations shall not exceed thirty (30) days from the
    time the Plaintiffs send the notice of dispute, unless that period is modified by
    written agreement of the City and Plaintiffs.  Failure of the City to respond to
    Plaintiffs' notice of dispute within thirty (30) days shall result in Plaintiffs' right
    to file an enforcement action related to that dispute.

42. In the event the representatives for Plaintiffs contend that there has been a
    failure by the City whether willful or otherwise, to perform in a timely manner

15

any act required by this Decree or otherwise to act in conformance with any provision thereof, the representatives for Plaintiffs may move this Court to take reasonable remedial action to correct the effects of non-compliance, to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of damages, costs, and reasonable attorneys' fees as approved by the Court which may have been occasioned by the violation or failure to perform.

**Monetary Relief and Attorneys' Fees and Costs**

43. The total sum of $900,000.00, including attorneys' fees and costs, paid by or on behalf of the City to or on behalf of Plaintiffs, sufficiency of which is hereby acknowledged, the Plaintiffs agree to this Consent Decree and the Full and Final Release of Claims set forth herein. No earlier than the Effective Date of the Consent Decree, Counsel for Plaintiff will transmit disbursement instructions to Counsel for Defendant.   Payment shall be disbursed in accordance with Counsel for Plaintiffs' instructions no later than forty-five days from Counsel for Defendant's receipt of those instructions. Payment disbursements shall be made in the following amounts and made payable to, or on behalf of, the following payee designations:

**Payee:     The Donahue Law Firm LLC Attorney Trust Account**

**Amount:  $900,000.00**

44. The City shall be responsible for its attorneys' fees and costs.

**Mutual Release and Modification of Decree**

45. In consideration of the terms and commitments of this Consent Decree, Plaintiffs hereby forever waive, release, and covenant not to sue the City, its

16

**EXHIBIT A**

successors, assigns, agents, employees and attorneys with regard to any and all

claims, damages, and injuries of whatever nature, whether presently known or

unknown, arising out of the subject matter of the above-captioned case.

46. The City hereby forever waives, releases, and covenants not to sue Plaintiffs

their successors, assigns, agents and attorneys with regard to any and all claims,

damages, and injuries of whatever nature, whether presently known or

unknown, as to the allegations contained in the operative complaint.

47. The terms and provisions of this Decree may not be modified except upon

written agreement of both parties.

48. The persons whose signatures appear below are authorized to bind the parties

to this Decree.

**Miscellaneous Terms**

49. The Parties agree to work in good faith to achieve the success of this Consent

Decree and to resolve informally any differences regarding interpretation of

and/or compliance with the terms of this Consent Decree.

50. This Consent Decree represents the product of negotiations and shall not be

deemed to have been drafted exclusively by any one party. This Consent

Decree shall be reasonably construed. In the event of a dispute regarding the

meaning of any language contained in this Agreement, this Agreement shall not

be construed against either party as drafter.

51. If any provision of this Consent Decree is found to be invalid or unenforceable,

the validity and enforceability of the remaining provisions of this Decree will

not be affected or impaired and shall continue in full force and effect to all

extent possible.

17

**EXHIBIT A**

52. This Consent Decree, including all exhibits attached hereto, constitutes the entire agreement between the parties and supersedes all prior agreements, promises and understandings, whether oral or written. This Consent Decree shall not be modified, amended, supplemented or revised, except by a written document signed by all Parties or counsel for the Parties.

53. Wherever appropriate herein, words used in the singular shall be considered to include the plural and words used in the plural shall be considered to include the singular.

54. This Consent Decree may by executed in counterparts. If executed in counterparts, each shall be deemed an original and all, taken together, shall constitute one and the same instrument.

55. Headings and captions contained in this Consent Decree are for the purposes of reference and context and do not create or establish obligations.

56. The Parties acknowledge and agree that this Consent Decree is entered into in order to compromise disputed claims and that nothing contained herein or the promises contained herein shall be construed or used to establish admission of liability or improper conduct on the part of any Released Parties.

57. In consideration of the actions and payments set forth in this Consent Decree, Plaintiffs hereby, release, acquit, and forever discharge the City, its assigns, agents, servants, officials, in their individual and official capacities, employees, officers, successors, insurers, and all other persons, firms, corporations, associations, or partnerships (collectively referred herein as the "Releasee" or the City) of and from any suits, claims, actions, causes of action, demands, and/or rights that Plaintiffs ever had, now have whether known or unknown, against City for any and all claims generally arising out of, as a consequence

18

**EXHIBIT A**

of, resulting from, for, upon or by reason of, or relating in any way relating to
the operative Complaint in the above-captioned matter.

58. Each Plaintiff agrees to hold harmless and indemnify the Releasee for any sums
which the Releasee may be required to expend or pay as a result of any
subsequent claims or litigation brought by that specific Plaintiff or their agent
related to any claims released herein, except that this paragraph does not operate
to make any individual Plaintiff responsible for the acts or any liens of any other
Plaintiff.

59. Each of the undersigned hereby individually warrants that s/he is entitled to
enforce and settle the aforesaid claim and to give a full and complete release
therefrom on behalf of herself and all interested parties.

60. The undersigned further declares and represents that no promise, inducement,
or agreement not herein expressed has been made to the undersigned, that this
Consent Decree contains the entire agreement between the Parties hereto, and
that the terms of this Consent Decree and the release terms herein are
contractual and not a mere recital.

61. The undersigned agree to execute any supplementary documents and to take all
supplementary steps that may be necessary to give full force and effect to the
terms of this Consent Decree and the release terms herein.

62. The undersigned hereby states that s/he has carefully read the foregoing
Consent Decree and the Release contained herein and/or that someone has
carefully read the foregoing Consent Decree and Release to her/him.  S/he
further states that s/he knows the contents thereof, has had the advice of counsel
regarding this Settlement and release, and that s/he signed the same of her/his
own free act.

**EXHIBIT A**

THE PARTIES CONSENT TO THE ENTRY OF THIS CONSENT DECREE AS

INDICATED BY THE SIGNATURES OF INDIVIDUAL PLAINTIFFS OR THEIR

REPRESNTATIVES AND DEFENDANTS BELOW:

Plaintiff **Heaven White**:

_____          9-30-2020
Heaven White                              Date

**D'Andre Covert**,  by:

_____          9-30-2020
Agent, Heaven White                       Date

20

**EXHIBIT A**

███████████

███████████, and

███████████, minors, by:

_Heaven White_      9-30-2020
Heaven White, Parent and Next Friend    Date

Witness:

P. Joseph Donahue   _P. Joseph Donahue_   9/30/20
(printed name)      (signature)      Date

Plaintiff, **Tameka Wright**:

_Tameka Wright_      Friday October 2, 2020
Tameka Wright      Date

███████████,

███████████,

███████████,

███████████,

███████████

21

**EXHIBIT A**

██ ███████████
██████, and

████████ minors, by:

_Tameka Wright_ _____   _Friday October 2, 2020_
Tameka Wright, Parent and Next Friend                   Date

Witness:

_P. Joseph Donahue_   _P. Joseph Donahue_   _10/2/20_
(printed name)                (signature)              Date

Plaintiff, **Janay Young**:

_Janay Young_ _____   _9/30/2020_
Janay Young                                          Date

███████████
█████ minors, by:

_Janay Young_ _____   _9/30/2020_
Janay Young, Parent and Next Friend              Date

22

**EXHIBIT A**

Witness:

_P. Joseph Donahue_ _____ _9/30/20_
(printed name)            (signature)                      Date




Plaintiff, **Glenn Rogers**:

_____ _9-30-2020_
Glenn Rogers                              Date


Witness:

_P. Joseph Donahue_ _____ _9/30/20_
(printed name)            (signature)                      Date


23

**EXHIBIT A**

24

**EXHIBIT A**

Plaintiff, **Lakeedrah Johnson**:

Lakeedrah Johnson                          Date   9/30/20

█████████, minor, by:

Lakeedrah Johnson, Parent and Next Friend   Date   9/30/20

Witness:

P. Joseph Donahue                          Date   9/30/20
(printed name)          (signature)

25

**EXHIBIT A**

Plaintiff, **LaDawn Camp**:

_____     9·30·2020
LaDawn Camp                                  Date

_____     9·30·2020
LaDawn Camp, Parent and Next Friend

Witness:

P. Joseph Donahue _____     9/30/20
(printed name)        (signature)       Date

26

**EXHIBIT A**

Plaintiff, **Tiamoni Johns**:

_____     10/1/20
Tiamoni Johns                          Date

█████████, and

█████████, minors, by:

_____     10/1/20
Tiamoni Johns, Parent and Next Friend   Date

Witness:

P. Joseph Donahue    [signature]    10/1/20
(printed name)        (signature)    Date

27

**EXHIBIT A**

Plaintiff, **Nashell Smith**:

_____     9/30/2020

Nashell Smith                                Date

████████,

████████, **and**

████████ minors, by:

_____     9/30/2020

Nashell Smith, Parent and Next Friend        Date

Witness:

T. Joseph Donahue     P. Joseph Donahue     9/30/20

(printed name)        (signature)           Date

28

**EXHIBIT A**

Plaintiff, **Lakisha McGowan**:

_____                    10/01/20
Lakisha McGowan                                   Date

█████████,

█████████,

█████████,

█████████, and

█████████ minors, by:

_____                    10/01/20
Lakisha McGowan, Parent and Next Friend           Date

Witness:

P. Joseph Donahue    P. _____    10/1/20
(printed name)       (signature)     Date

29

**EXHIBIT A**

Plaintiff, **Nicole Clark**:

_____   9/30/20
Nicole Clark                                Date

█████████, by:

_____   9/30/20
Agent, Nicole Clark                         Date

██████████████, minor, by:

_____   9/30/20
Nicole Clark, Parent and Next Friend        Date

Witness:

P. Joseph Donahue      P. Joseph Nuh       9/30/20
(printed name)         (signature)          Date

30

**EXHIBIT A**

Plaintiff, **Tyneice Holliday**:

_____   9/30/2020
Tyneice Holliday                                                 Date

█████████████

█████████████, and

████████, minors, by:

_____   9/30/2020
Tyneice Holliday, Parent and Next Friend           Date


Witness:

P. Joseph Donahue        P. _____        9/30/20
_____
(printed name)              (signature)                    Date


31

**EXHIBIT A**

Plaintiff, **Breonna Dixon**:

_____     10|4|20
Breonna Dixon                                 Date

Plaintiff, **Jonathan Dixon**:

_____     10|4|20
Jonathan Dixon                                Date

[redacted] , and

[redacted] , minors, by:

_____     10|4|20
Breonna and Jonathan Dixon, Parents and Next Friends     Date

Witness:

P. Joseph Donahue    R._____    10/4/20
(printed name)           (signature)        Date

32

**EXHIBIT A**

Plaintiff, **Lakisha Fuller**:

_____     10-1-20
Lakisha Fuller                                   Date

████████████,

████████████, and

████████████, minors, by:

_____     10-1-20
Lakisha Fuller, Parent and Next Friend      Date

Witness:

P. Joseph Donahue   _____   10/1/20
(printed name)          (signature)          Date

33

**EXHIBIT A**

Plaintiff, **Rynika Simms**:

_Rynika Simms_ _____   10/1/2020
Rynika Simms                                              Date

████████████████ , minor, by:

_Rynika Simms_ _____   10/1/2020
Rynika Simms, Parent and Next Friend                      Date

Witness:

P. Joseph Donahue    P. _____   10/1/20
(printed name)         (signature)                         Date

34

**EXHIBIT A**

ATTEST:

Regina C. Watkins-Eldridge, MMC,
City Clerk

CITY OF ANNAPOLIS:

By: _____
Gavin Buckley, Mayor

APPROVED FOR SUFFICIENT APPROPRIATIONS
AND AVAILABILITY OF FUNDS:

Joanna D. Dickinson, Director
Finance Department
Source of Funds:
72946 - 574900

REVIEWED AND APPROVED BY:

David Jarrell, City Manager

APPROVED FOR FORM AND LEGAL SUFFICIENCY:

Office of Law
D. Michael Lyles, City Attorney

35

**EXHIBIT A**